# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROSSIE DAVIS,                           :
                                        :
                Plaintiff,              :   CIVIL ACTION
                                        :
        v.                              :   NO. 11-cv-3401
                                        :
STATE FARM INSURANCE,                   :
                                        :
                Defendant.              :

**MEMORANDUM & ORDER**

**Joyner, C. J.**                                    **December 13, 2012**

Before this Court are Defendant's Motion for Summary Judgment (Doc. No. 46), Plaintiff's Cross-Motion and Response to Defendant's Motion (Doc. No. 48), Defendant's Response to Plaintiff's Cross-Motion (Doc. No. 51), and Plaintiff's Reply (Doc. No. 52). For the reasons set forth in this Memorandum, the Court will grant the Defendant's motion in part and deny it in part, and deny the Plaintiff's cross-motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

This case concerns Defendant State Farm Mutual Automobile Insurance Company's ("Defendant" or "State Farm") denial of a claim made by Plaintiff Rossie Davis ("Plaintiff" or "Davis") for theft coverage under her automobile insurance policy. Davis had an insurance policy with State Farm that covered theft and was in effect in January of 2011. On the morning of January 27, 2011, Davis called State Farm to report the theft of her car, a 2006

1

Pontiac Grand Prix.  Davis reported the theft to the Philadelphia Police Department.  When a state farm representative interviewed Davis, Davis recounted that she had last seen her car on January 26, 2011 at 7:49pm when she parked it close to her home and locked the vehicle, retaining both sets of keys.  She reported that she discovered the car missing around 9:30am on January 27th.  Davis was current with her payments on the vehicle, and her vehicle had been inspected and serviced within the previous year.  On January 31st, the Special Investigation Unit ("SIU") at State Farm completed its review of the claim, and reported that it had no concerns.  A State Farm representative advised Davis that the SIU would not be taking her case and authorized Davis's rental car coverage.

On February 2, 2011, the SIU did accept the case and commenced an investigation.  They did so because the police had advised State Farm that they had surveillance footage of the insured vehicle going into a tow yard prior to the date the loss was reported.  William Bergstrasser was assigned to investigate the situation for the SIU.  The photographs were provided to State Farm by the National Insurance Crime Bureau ("NICB").  Bergstrasser made notes in the claim file over the course of his investigation.  On February 10, 2011, he noted: "Vehicle has been recovered and is located at 4298 McAllister St. Phila...Buyer who had vehicle purchased off of Craigs List for 1K, on the Monday

2

prior to the reported theft 1/24. He dealt with a male and saw the vehicle on Sunday..." That same day, Bergstrasser received Davis's credit report, and found that it did not contain significant findings. The next day, February 11th, Bergstrasser took Davis's recorded statement, and entered what she had told him in the claim file. Bergstrasser then contacted several individuals with connections to Davis. On February 18, 2011, Bergstrasser prepared a reservation of rights advising Davis that State Farm was reserving its rights because it was questionable whether the loss was due to theft and whether material misrepresentations had been made.

Bergstrasser attempted to track down the individual who allegedly bought the car on Craigslist. He contacted Tow Decision, where the car had been taken and the site of the surveillance photos. Another investigator at State Farm, Michael Purdie, spoke with "Mikey" at Tow Decision and Bill Sutch at the NICB. From these conversations, the investigators gleaned that the car had been brought to Tow Decision by a man who worked on cars out of a shop on Tulip Street, later identified as Eric Brian. Brian had received the car from another man who had brought the car into the shop on Tulip Street and asked Brian to fix it, which Brian could not. So the other man sold it to Brian for $1000, and Brian then took off the doors and other parts and took the rest to Tow Decision to make a "junk deal." On February

24th, Bergstrasser noted that Sutch had obtained photos of the vehicle being brought into Tow Decision on January 25, 2011, and the photos were date and time stamped.[1]

On February 24th, Purdie found the garage on Tulip Street, and met with an employee who identified the owner as Eric Brian. The employee recalled the vehicle having been brought to the shop, but did not recall the date and had not seen or spoken to the person who brought the car into the shop. Later that day, Purdie spoke with Brian, who stated that he was contacted about the vehicle by a tow truck driver named "John" who owns "John's Towing." John told Brian that he was acting as a conduit between the shop where the car was and Brian's shop. John told Brian that the car owner had defaulted on repairs and they were selling the car for parts. Brian gave Purdie the phone number for John, which was disconnected. Brian also stated that he was certain that the car was at his garage for at least four days before he towed it over to Tow Decision.

Bergstrasser took a number of actions and spoke to a number of people in an attempt to track down John, John's Towing, and the number that Brian gave to Purdie associated with John's Towing. These efforts were unsuccessful. Finally, on March 3rd, Bergstrasser requested that the field investigation be

---

[1] The log entry actually states that the photos show the vehicle being brought into Tow Decision on Feb 25th, 2011. But as Feb 25th had not yet passed, and as is clear from other references, Bergstrasser clearly meant Jan 25th.

4

discontinued, as it was providing no information on how Brian came into possession of Davis's vehicle. The next day, Bergstrasser spoke with Davis and explained to her that he was going to recommend a denial of her claim as the results of the investigation showed her vehicle arriving at a tow facility two days prior to her saying she last drove it and before that it was at another garage where parts were removed for at least four days. Davis continued to deny the vehicle being in the tow yard on that date. The claim denial memo was prepared on March 8th, and a letter was sent to Davis on March 14th, stating that her claim had been denied because: "Our investigation has revealed that this loss was not the result of a theft. As a result, there is no coverage under the Comprehensive coverage," and "Our investigation has revealed that misrepresentations were made during the presentation of this claim, in violation of the Concealment or Fraud condition of this policy. As a result, there is no coverage under this policy for this loss."

    The real disputed issue of material fact is whether Davis's car was towed into Tow Decision on January 25th or on a later date. State Farm maintains that the date stamp on the photographs are correct, and that the car was towed in on January 25th. Davis maintains that the date stamp on the surveillance camera was incorrect, as sometimes garages or yards dealing with cars alter the dates on the cameras, and the car was towed to Tow

Decision on a later date, most likely January 31st. The Court will not fully go into the parties' arguments and evidence submitted to support each of their positions.[2] It will suffice to say that given the evidence presented, a genuine issue of material fact exists as to the date the car was towed into Tow Decision.

The Plaintiff filed her complaint against the Defendant on April 28, 2011 in the Court of Common Pleas for Philadelphia County. The Defendant removed the action to this Court on May 26, 2011 based on diversity jurisdiction. The Plaintiff is a resident of Pennsylvania and the Defendant is a corporation organized under the laws of Illinois and with its principal place of business in Illinois. (Notice of Removal, ¶¶ 1-5, Doc. No. 1). In her Complaint, the Plaintiff asserted the following claims: in Count I, an insurance bad faith claim; in Count II, a claim under Pennsylvania's Unfair Insurance Practices Act; in Count III, a claim for libel; and in Count IV, a claim for breach

---

[2] Briefly, State Farm asserts that the date on the photographs speaks for itself. Additionally, State Farm argues that the snow conditions in the Philadelphia area support the fact that the photographs were taken on January 25th, and not several days later. Davis asserts that State Farm did not validate the date on the photographs, and Mikey at Tow Decisions contacted his friend at the Philadelphia Police Department, John Logan, on January 31st, not January 25th, to report the car as stolen. She argues that cell phone records support this scenario. Davis also asserts that a supervisor of the SIU at State Farm, Michael Knox, stated that he was aware that "chop shops such as Tow Decision operate in a criminal element and that they have incentive to back date times [sic] stamps to avoid potential legal issues involving stolen cars." Given these facts, along with the more detailed facts and arguments presented by the parties in support of their motions, the Court concludes that there is a genuine issue of material fact as to when the car arrived at Tow Decision.

of contract. State Farm filed an Answer to the Complaint, and the parties conducted discovery. The Defendant filed a Motion for Summary Judgment on all counts of the Complaint on October 5, 2012. The Plaintiff filed a Cross-Motion for Summary Judgment on Counts I, III and IV on October 19, 2012. The Court will address the two motions together, proceeding by each claim made in the Complaint.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party; a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The summary judgment standard does not change when parties have filed cross-motions for summary judgment. Applemans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). We "must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Schlegel v. Life Ins. Co. Of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting

10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)). If review of cross-motions reveals no genuine issue of material fact, then judgment may be granted in favor of the party entitled to judgment in view of the law and undisputed facts. Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 535 (3d Cir. 2007); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the non-moving party cannot rely on "bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005). When the non-moving party is the plaintiff, she must "make a showing sufficient to establish the existence of [every] element essential to [her] case and on which [she] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

#### A. Insurance Bad Faith

Count I of the Complaint alleges an Insurance Bad Faith claim under 42 Pa. Cons. Stat. Ann. § 8371, which provides for recovery of interest, punitive damages, attorneys fees and costs

8

if, in an action arising under an insurance policy, the court finds that the insurer acted in bad faith towards the insured. 42 Pa. Cons. Stat. Ann. § 8371 (West). The term "bad faith" is not defined by the statute, but Pennsylvania courts have interpreted it as "any frivolous or unfounded refusal to pay proceeds of a policy." Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990)).

To recover for bad faith, a plaintiff must show: (1) the insurer did not have a reasonable basis for denying benefits under the policy; and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1997); see also J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004). Bad faith must be proven by clear and convincing evidence. Terletsky, 649 A.2d at 688. Given this evidentiary burden, "the plaintiff's burden in opposing a summary judgment motion is commensurately high." J.C. Penney Life Ins. Co., 393 F.3d at 367. Therefore, a plaintiff must show "that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." Id. (quoting Bostick v. ITT Hartford Grp., Inc., 56 F. Supp. 2d 583, 588 (E.D. Pa. 1999)). Mere negligence or bad judgment is not

9

enough to constitute bad faith. Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994). "A reasonable basis is all that is required to defeat a claim of bad faith." J.C. Penney Life Ins. Co., 393 F.3d at 367.

Under this standard for bad faith, the Defendant is entitled to summary judgment. In denying the Plaintiff's claim, State Farm performed an investigation that lasted more than a month, tracked down and interviewed individuals who might have information relevant to the insured vehicle's whereabouts on the dates in question, and obtained photographs showing the insured vehicle being towed into Tow Decision before the Plaintiff says she last drove the vehicle. The photograph is clearly stamped with the date of January 25, 2011, and the Plaintiff clearly told State Farm that the last time she drove the car was in the evening of January 26, 2011.

The Plaintiff has submitted evidence to the Court that calls into question whether or not the car was in fact towed into Tow Decision on January 25, 2011. However, such a genuine issue of fact is not material to the question of insurance bad faith. The issue is whether State Farm's decision was reasonable. Even if it is later shown that the car was in fact towed into Tow Decision after January 27, 2011, this alone would not render State Farm's decision unreasonable. Instead, the question is whether State Farm's decision was frivolous or unfounded, and

whether this can be shown by clear and convincing evidence.  The
Plaintiff cannot show that State Farm's decision was frivolous or
unfounded, even if it is later shown that the dates on the
photographs were wrong.  At the time it made the decision, State
Farm possessed photographs that were unequivocally stamped with a
date prior to the date the Plaintiff reported the vehicle stolen.
Equipped with these photographs, State Farm had evidence of fraud
or misrepresentations that, along with its extensive
investigation, indicate State Farm's reasonable basis for denying
the claim.  Therefore, the Court grants Defendant's motion for
summary judgment on Plaintiff's insurance bad faith claim in
Count I of the Complaint, and denies the Plaintiff's cross-motion
on this count.[3]

### B.  Unfair Insurance Practices Act

In Count II of the Complaint, the Plaintiff appears to
assert a claim under Pennsylvania's Unfair Insurance Practices
Act, 40 P.S. § 1171 et seq.  However, the Pennsylvania Unfair
Insurance Practices Act does not provide a private cause of
action.  See Fay v. Erie Ins. Group, 723 A.2d 712, 714 (Pa.
Super. Ct. 1999).  The Plaintiff has voluntarily dismissed her

---

[3] Furthermore, to the extent that the Plaintiff claims that the
Defendant acted in bad faith with respect to the letter it sent to the
Plaintiff on March 11, 2011 denying her claim, this claim also fails.  The
letter that was sent to Davis properly explained why her claim for coverage
was being denied, and there were documented conversations between State Farm
representatives and Davis where the representatives explained the reasons for
the denial and what was happening with the investigation.  Therefore, the
letter was not unreasonably deficient in its explanation to the Plaintiff.

claims under the Unfair Insurance Practices Act, and requested that the allegations in Count II be merged into Count I to further support her bad faith claim against the Defendant, which the Court has done. As there is no private right of action under the Unfair Insurance Practices Act, the Court grants Defendant's motion for summary judgment on Count II.

### C. Libel or Defamation

In Count III of the Complaint, the Plaintiff asserts a claim of libel. The Plaintiff states that the Defendant has accused her of concealment, fraud and/or misrepresentation, without basis. (Compl. ¶¶ 28-29, Doc. No. 1). To support this claim in the Complaint, the Plaintiff asserts that the Defendant publicized the denial of the Plaintiff's claim via a loss information system, which shares information about claims among insurance companies. (Compl. ¶¶ 32-37, Doc. No. 1). However, in her cross-motion, the Plaintiff bases her claim on Defendant's report to the Philadelphia District Attorney's Office of the denial of the claim under suspicion of fraud. (Pl.'s Cross-M. for Summ. J., ¶ 44, Doc. No. 48). Under either scenario, the Plaintiff's claim for libel or defamation fails.

Under Pennsylvania law, in an action for defamation, the plaintiff must prove: (1) the defamatory character of the communication; (2) the publication of the communication by the defendant; (3) the communication's application to the plaintiff;

12

(4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of the communication as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. Ann. § 8343 (West).

The Plaintiff has failed to put forth any evidence of libel or defamation under the theory that the Defendant publicized the denial of her claim on a loss information system. The Plaintiff has not proved the second element, publication, and has not made "a showing sufficient to establish the existence of [every] element essential to [her] case on which [she] will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

The Plaintiff's claim also fails under the theory that the Defendant published the denial of her claim to the Philadelphia District Attorney's Office because such statements are absolutely privileged. "It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. Ct. 1991) (citing Binder v. Triangle Publications, Inc., 275 A.2d 53, 56 (Pa. 1971)). In Pawlowski, the Pennsylvania Superior Court found that this absolute privilege encompassed statements amounting to an accusation of a crime made

13

to law enforcement officials for the purpose of bringing criminal charges.  588 A.2d at 42.  In analyzing a situation similar to the one here - where the defendant made a statement to the District Attorney and State Police accusing the plaintiff of perjury - the Superior Court concluded, "the policies underlying the judicial privilege equally justify a finding of privilege under the circumstances of this case."  Id.  Allowing privilege to extend to these statements "aims at ensuring free and uninhibited access to the judicial system."  Id.

"It is a question of law whether privilege applies in a given case."  Agriss v. Roadway Exp., Inc., 483 A.2d 456, 463 (Pa. Super. Ct. 1984).  The Court finds that the absolute privilege for statements made preliminary to a judicial proceeding applies to the Defendant's communication to the Philadelphia District Attorney's Office.  The communication was clearly made to induce the initiation of criminal charges, and the Defendant was even compelled to report its suspicions of fraud to law enforcement authorities by Pennsylvania statute.  See 75 Pa. Cons. Stat. Ann. § 1817 (West) ("Every insurer licensed to do business in this Commonwealth, and its employees ...who has a reasonable basis to believe insurance fraud has occurred shall be required to report the incidence of suspected insurance fraud to Federal, State or local law enforcement authorities.").  The fact that the criminal charges against the

14

Plaintiff were ultimately dismissed is immaterial to the application of absolute privilege here. Pawlowski, 588 A.2d at 42. As such, the Court grants the Defendant's motion for summary judgment on Count III of the Plaintiff's Complaint, and denies the Plaintiff's cross-motion on the same.

### D. Breach of Contract

Count IV of the Plaintiff's Complaint alleges a claim for breach of contract, asserting that the Defendant breached the insurance policy contract when it failed to pay benefits that were due under the policy. The Court finds that there are genuine issues of material fact with respect to whether the Plaintiff's claim was wrongly denied. In particular, as explained in the recitation of the facts above, there are issues of fact for a jury to decide regarding whether the Plaintiff's car arrived at Tow Decision on January 25, 2011 or later. As such, the Court denies Defendant's motion for summary judgment on Count IV. For the same reasons, the Court denies the Plaintiff's cross-motion on this count.

### IV. CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment with respect Counts I, II and III of the Plaintiff's Complaint, and denies the Motion with respect to Count IV. The Court denies the Plaintiff's Cross-Motion for Summary Judgment in full. A separate order follows.